MELISSA HOLYOAK, United States Attorney (#9832)
JOHN AUCHTER, Special Assistant United States Attorney (IL #6308510)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682
Email: john.auchter@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KOLE NELSON WHITING,<br><br>Defendant. | Case No. 2:26-mj-00756 DBP<br><br>FELONY COMPLAINT<br><br>Count 1: 18 U.S.C. § 2252A(a)(2)(A), (B), and (b)(1), Distribution of Child Pornography<br><br>Count 2: 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), Possession of Child Pornography<br><br>Judge Dustin B. Pead |

Before the Honorable Dustin B. Pead, United States District Judge for the District of Utah, appeared the undersigned, who on oath deposes and says:

**COUNT 1**

18 U.S.C. § 2252A(a)(2)(A), (B), and (b)(1)
(Distribution of Child Pornography)

Beginning on a date unknown and continuing until September 17, 2026, in the District of Utah and elsewhere,

KOLE NELSON WHITING,

defendant herein, did knowingly distribute any child pornography, and material that contained child pornography, as defined in 18 U.S.C. § 2256(8), using any means and facility of interstate and foreign commerce and that has been mailed, and has been shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, and attempted to do so; all in violation of 18 U.S.C. § 2252A(a)(2)(A), (B), and (b)(1).

**COUNT 2**

18 U.S.C. § 2252A(a)(5)(B)
(Possession of Child Pornography)

Beginning on a date unknown and continuing until September 17, 2026, in the District of Utah,

KOLE NELSON WHITING,

defendant herein, did knowingly possess any material which contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, and shipped and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, and that were produced using materials that had been mailed, and shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, and attempted to do so; all in violation of 18 U.S.C. § 2252A(a)(5)(B).

ELEMENTS

The elements of Count 1, (18 U.S.C. § 2252A (a)(2)(A), (B), and (b)(1)) are:

1. The defendant knowingly distributed child pornography or any material that contained child pornography;

2. The defendant knew that the material was child pornography or contained child pornography; and

3. The child pornography was shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

The elements of Count 2 (18 U.S.C. § 2252A(a)(5)(B) and (b)(2)) are:

1. The defendant knowingly possessed any material that contained an image of child pornography;

2. The defendant knew that the material was child pornography or contained child pornography; and

3. The child pornography was shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## SUMMARY OF INVESTIGATION AND PROBABLE CAUSE

This complaint is made on the basis of investigation consisting of the following:

I, Nicholas Zollinger, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), United States Department of Justice. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to

make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I have served as an FBI Special Agent since October 2025, and I am currently assigned to the Provo Resident Agency (RA) of the Salt Lake City Office of the FBI. During my time at the FBI, I have participated in investigations involving violent crime, crimes against children and have observed and reviewed examples of child pornography in various forms of media, to include computer media during these investigations. I have also received training and instruction in the field of investigating child pornography, executing search warrants, identification and collection of computer-related evidence, aiding foreign law enforcement agencies, search and seizure of computers, and analysis of electronically stored information for online account. Prior to my time with the FBI, I served as Police Officer in the State of Utah for eight years enforcing Utah state law and investigating criminal violations. In addition, I have had the opportunity to work with other FBI Agents and other law enforcement Agents and officers, who have also investigated these crimes.

3. Based upon my training, experience, and investigative efforts into the matter at hand, and information received from other individuals, including law enforcement officers, I have learned the following:

4. On June 20, 2025, an FBI undercover agent was using a social media application to investigate the distribution and possession of child pornography and observed an individual using the username "hamburger2" who was distributing three different child pornography videos involving infants and toddlers in a group named "NL extreme." The description of the group NL extreme stated it was dedicated to sharing

child pornography with "no limits." The FBI undercover agent sent a direct message to hamburger2 on the social media application and started a conversation; during this conversation hamburger2 shared six additional child pornography videos with the FBI undercover agent. These videos depicted naked infants being forced to perform oral sex on adult males or being ejaculated on by adult males.

5. The social media application that was used is based outside the United States. It is a privacy-focused, end-to-end encrypted messaging application. It maintains all its servers in secure data centers outside the United States. Users receive a unique 9-digit ID and QR code to connect with other users and can create their own display name. Messages and media are immediately deleted from company servers after delivery and reading, and the company does not track or save IP addresses and metadata. Based on my training and experience, I know that these features make it an attractive messaging platform for individuals who are involved in the distribution of child pornography as those features conceal the identity of the user and prevent after-the-fact investigation by law enforcement.

6. During the conversations between hamburger2 and the FBI undercover, the FBI undercover was able to determine the IP address which was being used by hamburger2. Through additional investigation, the FBI determined that the IP address had KOLE NELSON WHITING's house as the service address.

7. On September 11, 2026, the United States District Court for the District of Utah issued a search and seizure warrant, Case No. 2:26-mj-735-JCB, for KOLE NELSON WHITING's house, and on September 17, 2026, FBI agents and deputies from

the Juab County Sheriff's Office served the warrant. KOLE NELSON WHITING was present at the time of the search warrant execution and agreed to be voluntarily interviewed by agents. At the start of the interview, I advised KOLE NELSON WHITING of his rights, and he agreed to waive them and signed a written *Miranda* waiver form.

8. During the interview, KOLE NELSON WHITING admitted to me that he used his iPhone to distribute and possess child pornography. KOLE NELSON WHITING also told me that he exclusively used the social media application described above to distribute and possess child pornography and did not otherwise use that application for legitimate reasons. KOLE NELSON WHITING admitted that he previously used the username "hamburger2," that he currently used a different username, and that he had adjusted the settings on the social media application to automatically delete his cache and messages every 24 hours.

9. KOLE NELSON WHITING admitted that when he received child pornography from other users, he saved the images and videos to his iPhone in a gallery titled with the name of the social media application. I reviewed this album and saw that 688 images and videos had been saved to the album, with the most recent being saved on August 27, 2026 at approximately 4:00 a.m. Below are some examples of the photos and videos which I saw in this album on KOLE NELSON WHITING's iPhone:

1. A video of a naked female infant laying on a bed. An unknown male is then seen anally raping the infant as she begins to cry;
2. A video of female toddler laying on her back staring at the camera. Her

underwear is being held around her legs as an unknown male rubs his penis and ejaculates onto her pubic area while she stares at the camera.

3. A video of a male toddler sleeping. An unknown male uncovers the boy's legs and exposes the toddler's penis. The unknown male then rubs the toddler's penis before masturbating on camera and ejaculating onto the sleeping boy's Pubic area.
4. A photo series of a prepubescent girl laying naked on a bed. Her legs are spread and an unseen subject is holding a butcher's knife in between the folds of her vagina. The next photo is of the same girl kneeling naked on the bed while an unknown male holds the knife to her throat. In both photos, there is a black text box covering her eyes.

10. KOLE NELSON WHITING admitted that he joined several groups on the social media application which were dedicated to sharing child pornography including the group NL Extreme. KOLE NELSON WHITING told me that to be approved to join a group dedicated to sharing child pornography, he would first need to send child pornography pictures and videos to the group. Once he was approved to join these groups, he would send additional child pornography to group members and save the child pornography that other members sent to the group. KOLE NELSON WHITING said that he would block groups periodically because by doing so, he would still have access to the group's name and be able to rejoin. If he only exited the group, the application on his iPhone would automatically delete all data related to that group and he would have difficulty rejoining or finding the group again.

CONCLUSION

Based on the above recitation and investigation, there is probable cause to believe KOLE NELSON WHITING violated 18 U.S.C. § 2252A (a)(2)(A), (B), and (b)(1), and 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) during the time period alleged above.

I respectfully request that a warrant of arrest be issued for KOLE NELSON WHITING for these violations.

Nicholas Zollinger
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me telephonically
on this 17th day of September, 2026.

HONORABLE Dustin B. Pead
United States Magistrate Judge

APPROVED:

MELISSA HOLYOAK
United States Attorney

*/s/ John Auchter*
JOHN AUCHTER
Special Assistant United States Attorney